# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ALEXANDRA ALFONSO *et al.*,              :
                                          :
          Plaintiffs,              :     Civil Action No.:     04-1834 (RMU)
                                          :
          v.              :     Document No.:     12
                                          :
DISTRICT OF COLUMBIA *et al.*,            :
                                          :
          Defendants.              :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## I.   INTRODUCTION

The plaintiffs previously brought suit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, alleging that the defendants failed to provide the child plaintiff with an appropriate individualized education program[1] ("IEP") prior to the start of the 2004-2005 school year and seeking reimbursement of tuition expenses for that school year.  On February 16, 2006, the court granted the plaintiffs' motion for summary judgment.  This case now comes before the court on the plaintiffs' motion for $51,659.19 in attorneys' fees and costs. Because the plaintiffs are prevailing parties and because most of the requested fees are

---

[1]    An Individualized Education Program ("IEP") "sets forth the child's educational level, performance, and goals," and "is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996); see also *Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 25 (D.D.C. 2004) (stating that the IDEA requires that an IEP "include a statement of needs, services, learning aids, and programs that should be made available to the student").  Once the IEP team develops the IEP, the school system must provide an appropriate educational placement that comports with the IEP. *Spilsbury*, 307 F. Supp. 2d at 25.

reasonable, the court grants the plaintiffs' motion in part and denies it in part, and awards the

plaintiffs $41,017.44 in attorney's fees.


## II.   BACKGROUND

The child plaintiff suffers from significant visual impairment.  Compl. ¶ 6.  On

September 15, 2003, the child's mother registered her at Shepherd Elementary ("Shepherd") and

requested that the District of Columbia Public Schools ("DCPS") begin the process of

determining the child's eligibility for special education under the IDEA.  Compl. ¶ 12.  DCPS

drafted an IEP in which the child plaintiff would attend Shepherd and receive a variety of therapy

and education tailored to her needs.  Admin. R. at 103, 106.  The plaintiffs challenged that IEP as

inadequate.  Pls.' Mot. for Summ. J. at 7, 11.

After exhausting their administrative remedies, the plaintiffs filed suit pursuant to the

IDEA on October 21, 2004.  On February 16, 2006, the court granted the plaintiffs' motion for

summary judgment, concluding that the defendants had not completed the IEP in compliance

with the IDEA and D.C. law.  Mem. Op. (Feb. 16, 2006) at 7-11.  On March 17, 2006, the

plaintiffs brought this motion for attorneys' fees and costs.


## III.   ANALYSIS

### A.   Legal Standard for Awarding Attorneys' Fees under the IDEA

The IDEA allows the parents of a disabled child to recover "reasonable attorneys' fees" if

they are the "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  A court's determination of the

appropriate attorneys' fees, in other words, is based on a two-step inquiry.  First, the court must

determine whether the party seeking attorneys' fees is the prevailing party.  *Id.*  A prevailing

party "is one who has been awarded some relief by a court."  *Buckhannon Bd. & Care Home, Inc.*

*v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. Dist. of*

*Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court must determine whether the attorneys' fees sought are reasonable.  20

U.S.C. § 1415(i)(3)(B).  "The most useful starting point for determining the amount of a

reasonable fee is the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v.*

*Dist. of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA

context).  The plaintiff bears the burden of demonstrating that the number of hours spent on a

particular task is reasonable.  *Holbrook v. Dist. of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C.

2004).  The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently

detailed to 'permit the District Court to make an independent determination whether or not the

hours claimed are justified.'"  *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675

F.2d 1319, 1327 (D.C. Cir. 1982)).  "Once the plaintiff has provided such information, a

presumption arises that the number of hours billed is reasonable and the burden shifts to the

defendants to rebut the plaintiff's showing of reasonable hours."  *Herbin v. Dist. of Columbia*,

2006 WL 890673, at *5 (D.D.C. Apr. 4, 2006).  With respect to the reasonable hourly rate,

attorneys' fees in IDEA actions in the District of Columbia are reasonable if they conform to the

*Laffey* Matrix[2] created by the United States Attorneys' Office.  *Lopez v. Dist. of Columbia*, 383 F.

---

[2]     The *Laffey* Matrix is "a schedule of charges based on years of experience." *Herbin v. Dist. of Columbia*, 2006 WL 890673, at *4 (D.D.C. Apr. 4, 2006).

Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. Dist. of Columbia*, 329 F. Supp. 2d 20, 25

(D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(c) (stating that attorneys' fees awards "shall be

based on rates prevailing in the community in which the action or proceeding arose for the kind

and quality of services furnished").

### B.   The Court Grants in Part and Denies in Part the Plaintiffs' Motion for Attorneys' Fees

As a preliminary matter, the court notes that the defendants do not dispute that the

plaintiffs are the prevailing party in the underlying IDEA suit.  Defs.' Opp'n to Pls.' Mot. for

Attys' Fees & Costs ("Defs.' Opp'n") at 1.  Indeed, because the plaintiffs succeeded on their

motion for summary judgment, they are the prevailing party and entitled to recover reasonable

attorneys' fees.  *Buckhannon*, 532 U.S. at 603.

The plaintiffs claim that they are entitled to attorneys' fees and costs in the amount of

$51,659.19 and submit an invoice to meet their burden to demonstrate that this amount is

reasonable.  The defendants, in essence, raise three challenges to rebut the plaintiffs' calculation

of the fees.[3]  First, they argue that the time expended by the plaintiffs' attorneys is unreasonable.

Defs.' Opp'n at 8- 9.  Second, the defendants argue that the rates charged by plaintiffs' counsel

are excessive.  *Id*. at 3-8.  Finally, they argue that the plaintiffs are not entitled to any attorneys'

fees or costs for work relating to the IEP meeting.  *Id*. at 9.  Because the plaintiffs have not

demonstrated that all of plaintiffs' counsel's claimed hours and rates are reasonable, the court

reduces plaintiffs' counsel's fees and grants fees and costs in the amount of $41,017.44.  Because

---

[3]      The defendants do not challenge plaintiffs' counsel's claimed costs.

the IEP meeting was not a result of an administrative proceedings or judicial action, the court

denies the plaintiffs' request for attorneys' fees and costs as related to the IEP meeting.

### 1.    Reasonableness of Plaintiffs' Counsel's Expended Time

The plaintiffs submitted an invoice itemizing their attorneys' fees and costs, requesting

$51,659.19.  Pls.' Mot. for Attys' Fees & Costs ("Pls.' Mot."), Ex. 1-4.  The defendants allege

that the hours billed by plaintiffs' counsel are excessive and unnecessary for several reasons.

Defs.' Opp'n at 8.  The defendants first claim that it is excessive for plaintiffs' co-counsel to bill

for 24 conferences they held to discuss the case.  *Id.*  Accordingly, they ask the court to reduce

the attorneys' fees for these meetings by 15 percent.  *Id.*  The plaintiffs counter that thorough

communication among co-counsel was an important mechanism used by the plaintiffs' counsel to

prevail in the litigation.  Pls.' Memo. in Reply to Defs.' Opp'n ("Pls.' Reply") at 4.  Furthermore,

the plaintiffs point out that many of the conferences took only minutes.  *Id.*

In support of the fees claimed for co-counsel conferences, the plaintiffs assert that

"differing opinions and ideas require conferences among co-counsel" and that they "cannot

predict how this case might have gone had these skilled attorneys not discussed this

litigation . . ."  Pls.' Reply at 4.  As the defendants highlight, however, one plaintiffs' counsel

billed for 15 conferences during a one-year period of time, and plaintiffs' counsel in total billed

for 24 conferences.  Defs.' Opp'n at 8.  Mindful that this case spanned 16 months and involved

only eight filings, the court concludes that the defendants have successfully rebutted the

plaintiffs' showing that these charges are reasonable.  Although communication among co-

counsel is, indeed, important, the court concludes that the charges for these conferences are

excessive and reduces the requested attorneys' fees.

The precise number of hours counsel spent in conferences, however, is unclear due to plaintiffs' counsels' failure to properly itemize their hourly charges. *See generally* Pls.' Mot. Ex. 1 at 1 (claiming, for example, that an attorney spent 2 hours and 36 minutes both conferencing with co-counsel and drafting the complaint but failing to distinguish time spent on each distinct activity). Because the court cannot ascertain the exact number of hours billed for the conferences, it reduces by 10% the overall award of attorneys' fees. *Hensley*, 461 U.S. at 433 (stating that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly"); *Nat'l Assn. of Concerned Veterans*, 675 F.2d at 1327 (explaining that "[t]he fee application must . . . contain sufficiently detailed information about the hours logged and the work done").

The defendants bring a number of additional challenges to the plaintiffs' claim of attorneys' fees. The defendants assert that plaintiffs' counsel Haylie Iseman spent an excessive amount of time in re-calendering four status conferences. Defs.' Opp'n at 8 and 9. In addition, the defendants claim that it was unreasonable for Iseman to bill for sending a letter to the DCPS Associate Superintendent, because DCPS's counsel "always files a copy of the administrative record in the District Court." Defs.' Opp'n at 9. They also deem unreasonable Iseman's charge for reviewing the court's Standing Order. Defs.' Opp'n at 9. These three itemizations bill for 24 minutes, 18 minutes and 30 minutes, respectively. The plaintiffs respond to the defendants' argument by explaining that these charges are a reasonable part of IDEA litigation and that these actions were necessary to protect the plaintiffs' best interest. Pls.' Reply at 3-5. For example, the plaintiffs contend that in counsel's experience, DCPS frequently "either forget[s] to file a copy of the administrative record, or [delays] until it is requested." *Id*. at 3-4.

6

The court concludes that the plaintiffs have sufficiently demonstrated that these charges are reasonable expenses of litigation by providing "an invoice that is sufficiently detailed" to permit the court's meaningful review and by arguing that the charges incurred were reasonable aspects of the litigation. *Holbrook*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). Moreover, the defendants' challenges demonstrate precisely the type of "nit-picking" that this Circuit discourages. *Id.*, 305 F. Supp. 2d at 46 (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1337-1338 (Tamm., J., concurring) (stating that although the district court should "examine with care the 'issues' raised by opposing parties," it need not entertain "nit-picking" challenges to applications for attorneys' fees)). In concluding that the plaintiffs' have met their burden, the court declines the defendants' invitation to "conduct a minute evaluation of each phase or category of counsel's work." *Copeland*, 641 F.2d at 903.

Finally, the defendants contend that plaintiffs' counsel failed to exercise the required "billing judgment" because plaintiffs' counsel did not identify any time they billed the plaintiffs but excluded from the fee petition. Defs.' Opp'n at 7. Thus, the defendants argue, the absence of excluded hours requires the court to consider reductions in the requested attorneys' fees. *Id.* at 8. In support of this contention, the defendants cite to *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C. Cir. 1982), which states that "attorneys who have exercised billing judgment must specifically identify any hours that were excluded from a fee petition and indicate the tasks to which those hours were devoted." Defs.' Opp'n at 7. *National Association of Concerned Veterans*, however, involved a plaintiff's recovery of attorneys' fees on successful claims in a lengthy litigation. 675 F.2d at 1319. The court in that case emphasized the importance of distinguishing the hours spent by counsel on successful claims from those

7

spent on unsuccessful claims, as the plaintiff was only allowed to recover attorneys' fees for time spent on issues on which the plaintiff ultimately prevailed. *Id*. Thus, the court in that case specifically required the plaintiff to exclude time expended on unsuccessful claims and to state the nature of work and the number of hours involved with the excluded time. *Id.* at 1327.

This court does not interpret *National Association of Concerned Veterans* to establish a universal requirement that a fee-seeking party "must specifically identify any hours excluded from a fee petition," especially when the plaintiff undisputably prevails on all claims in the underlying suit, as is the case here. Based on the record, the plaintiffs have met their burden to demonstrate that the documented hours were in general reasonably productive, save for the items stricken above. *Copeland*, 641 F.2d at 903 (stating that "an appellate court does not intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation").

### 2. Reasonableness of Plaintiffs' Counsel's Hourly Rates

The defendants also challenge plaintiffs' counsel's hourly rates. Defs.' Opp'n at 3-6. The defendants allege that the plaintiffs failed to meet their burden to prove that the fees charged were reasonable, primarily because the plaintiffs failed to "provide specific evidence of the prevailing community rate for the type of work for which they seek an award" or to "recite the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Id.* at 4. In addition, the defendants point out that three of plaintiffs' counsel[4] charged rates higher than those allowed by the *Laffey* Matrix for their respective

---

[4] The defendants do not challenge the hourly rates charged by plaintiffs' counsel Michael Eig.

experience levels.[5]  *Id.* at 5-6.  To sustain their burden to prove that these rates are reasonable, the plaintiffs highlight the experience and qualifications of plaintiffs' counsel's firm and the firm's long history of practice in this area of law.  Pl's Reply at 1-2.

The IDEA provides that attorneys' fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(c).  Attorneys' hourly rates in IDEA actions in the District of Columbia are generally reasonable if they conform to the *Laffey* Matrix.  *Lopez v. Dist. of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005).  When the requested hourly rates are higher than those set forth in the *Laffey* Matrix, courts generally reduce the attorneys' hourly rates to the rates provided by the *Laffey* Matrix.  *See e.g. Dist. of Columbia v. R.R.*, 390 F. Supp. 2d 38, 41 (D.D.C. 2005); *see e.g. Watkins v. Vance*, 328 F. Supp. 2d 27, 31 n.3 (D.D.C. 2004). Accordingly, the court reduces Iseman's rate for work performed from June 1, 2004 to May 31, 2005 to $225 per hour and her rate for work performed from June 1, 2005 to May 31, 2006 to $235 per hour.  The court likewise reduces plaintiffs' counsel Lauren Moynihan's rate to $225 per hour for all work performed by her.  Finally, the court reduces plaintiffs' counsel Paula Rosenstock's rate for work performed from June 1, 2004 to May 1, 2005 to $185 per hour and reduces her rate to $195 for work performed from June 1, 2005 to May 1, 2006.

---

[5]     Plaintiffs' counsel Haylie Iseman and Lauren Moynihan, both with five years of legal experience, charged $250 per hour for work performed, although the *Laffey* Matrix allows $225 per hour for 2004-2005 and $235 per hour for 2005-2006 for their experience level.

Plaintiffs' counsel Paula Rosenstock, with two years of legal experience, charged at $250 per hour for work performed from January 2005 through March 2006, although the *Laffey* Matrix allows $185 for January through May 31, 2005 and $195 per hour for June 1, 2005 through March 2006 for her experience level.

### 3. Attorneys' Fees for Attending the IEP Meeting

The plaintiffs also claim attorneys' fees for work associated with the IEP meeting, Pls.'
Mot., Ex. 3 at 5, but the defendants contend that the terms of the IDEA preclude the court from
awarding attorneys' fees for work relating to the IEP meeting, Defs.' Opp'n at 10.  The IDEA
provides that "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP team
unless the meeting is convened as a result of an administrative proceeding or judicial action."  20
U.S.C. 1415 (i)(3)(D)(ii).  The plaintiffs do not argue that the disputed IEP meeting was
convened as a result of administrative proceeding or a judicial action.  Rather, they argue that the
court should "soften" this IDEA provision in this case because the IEP meeting here eventually
culminated in due process appeals.  Pls.' Reply at 7-8.  When a statute is unambiguous, however,
the court must apply its terms literally, and the court declines to "soften" the statute.  *Friends of
the Earth, Inc. v. E.P.A.*, 446 F.3d 140, 144 (D.C. Cir. 2006) (explaining that courts "begin, as
always, with the statute's language" and stating that "if 'Congress has directly spoken to the
precise question at issue . . ., that is the end of the matter'") (quoting *Chevron U.S.A., Inc. v.
Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).  Here, Moynihan billed $375.00
for attending the November 15, 2004 IEP meeting, but the IEP meeting was not convened as the
result of an administrative proceeding or a judicial action.  Therefore, the plaintiffs are not
entitled to attorneys' fees for attending the IEP meeting, and the court reduces the plaintiffs'
requested attorneys' fees by $375.00.

In sum, the court first calculates the adjusted rates for Iseman, Moynihan and Rosenstock, as set forth in the chart below:

| Attorney | Period | Hourly Rate | Hours | Attorney's Fees |
|---|---|---|---|---|
| Iseman | May 14, 2004 – May 31, 2005 | $225 | 41.3 | **$9,292.50** |
| | June 1, 2005 – May 31, 2006 | $235 | 6.9 | **$1,621.50** |
| Moynihan | June 1, 2004 – May 31, 2005 | $225 | 14.5 | **$3,262.50** |
| Rosenstock | June 1, 2004 – May 31, 2005 | $185 | 63.40 | **$11,729.00** |
| | June 1, 2005 – May 31, 2006 | $195 | 0.60 | **$117.00** |
| Total: | | | | **$26,022.50** |

Next, the court adds Michael Eig's unchallenged attorney's fees of $19,620.00, *see* Ex. 1, 3, to reach a total of $45,642.50. The court reduces this total by 10%, or $4,564.25, *supra* at 5, and subtracts $375.00 for the stricken IEP meeting fee, *supra* at 9-10. The court then includes the requested $314.19 for attorneys' costs. Pls.' Mot. at 4. Therefore, the court awards the plaintiffs attorneys' fees and costs in the amount of $41,017.44.

### D.   Statutory Cap under the District of Columbia Appropriation Act

The District of Columbia Appropriations Act of 2006 ("DCAA"), 109 Pub. L. No. 115, bars the District's use of funds appropriated by the 2006 DCAA for payment of attorneys' fees in IDEA cases in excess of $4,000. Pub. L. No. 109-115 (2006). Equivalent language is found in the 2004 and 2005 Appropriations Acts. Dist. of Columbia Appropriations Act of 2005, Pub. L. No. 108-335 § 327(1) (2005); Consolidated Appropriations Act for 2004, Pub. L. No. 108-199 § 432 (2004). The successive Appropriations Acts cap the amount of attorneys' fees the District of Columbia can pay the prevailing plaintiffs in IDEA actions. *Kaseman*, 329 F. Supp. 2d at 23,

n.1.  This statutory cap does not, however, bar the court's authority to award the plaintiffs

attorneys' fees above the $4,000 cap.  *Calloway v. Dist. of Columbia*, 216 F.3d 1, 12 (D.C. Cir.

2000).  The court may, therefore, award fees in excess of the statutory cap, and the court awards

the plaintiffs the amount of attorneys' fees and costs in the amount of $41,017.44 despite the

District's lack of capacity to make a full payment.  *Kaseman*, 329 F. Supp. 2d at 23.  Because the

D.C. Appropriations Act caps the amount that the defendants may pay for attorneys' fees and

costs at $4,000 and because the court cannot order the defendants to violate an act of Congress,

the court's order, issued contemporaneously with this Memorandum Opinion, only requires the

defendants to pay $4,000.


### III.   CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiffs' motion

for attorneys' fees and costs.  An order directing the parties in a manner consistent with this

Memorandum Opinion is separately and contemporaneously issued this 13th day of December,

2006.


RICARDO M. URBINA
United States District Judge